Kath Right. Counsel, I assume you've divided your time amongst yourselves. Uh, yes, we have your honor. Um, I'm Kelly Barnes for, uh, uh, Kerm, Kate, your honor. Um, it would be our, uh, division that, uh, I would take approximately eight minutes leaving a six a piece for, uh, Mr. Kelleher for Mr. Reese and Mr. Lansing for Mr. Alden. Thank you, Ron. Uh, the issue that, uh, was, uh, before the court in this particular case was whether Mr. Case, uh, should have, um, uh, been classified as an organizer or leader of, uh, this particular, uh, uh, conspiracy involving the sale of light bulbs to, uh, uh, federal agencies out in reservations in Montana, Wyoming, and South Dakota. The district court assigned a four point increase to, uh, Mr. Case, uh, offense level, uh, for him being an organizer or leader, thereby increasing his particular sentence. Uh, under section, uh, 3B1.1 of the, uh, sentencing, uh, guidelines, the court can, of course, assign a three or a four point, uh, increase, uh, depending on whether, uh, an individual is considered to be an organizer or leader or supervisor or manager. Uh, we would, uh, uh, contend, uh, that the, uh, assessment of that four points in this particular case was clear error by, uh, district judge Siebel, uh, when you compare the involvement of the remaining, uh, defendants involved in these, uh, particular cases. The, uh, point that Kern does not challenge is that the threshold to be, uh, before you ever get to whether an individual is an organizer or leader under these guidelines is whether, uh, there's five or more participants or whether the activity is otherwise extensive. And I don't think that there are credible argument can be made to challenge that particular aspect of this case. Uh, the gov... There were other individuals involved. Yes, judge. Um, in the three separate indictments, um, some of them overlap, but I can't argue that with the three states and geographic dispersion and the government kind of pounds on that in its briefing. But I think the government kind of misses the point. The fact that, uh, uh, the case was otherwise extensive only gets you to the organizer, leader, supervisor, uh, or, uh, manager. And, um, uh, just the geographic dispersion, this matter alone doesn't, doesn't get that done. Um, the factor that we have to get to is whether, uh, Kern or Mr. Kaith controlled, uh, any of the other individuals involved in this particular matter. Well, the district court found that, um, he controlled them through greed. Yes, Your Honor. Um, and I don't think that that's what, uh, the guidelines are after. Um, this is a case of kickbacks or bribery. That's elemental in, in, in the charging offense. And you get 10 points for, uh, uh, convict, uh, being convicted of that particular offense. It, um, if, if, if that were the case, every kickback or bribery, uh, uh, prosecution brought by the United States attorney's office, uh, would involve an enhancement for someone being an organizer or leader, uh, if they had five or more participants or was otherwise extensive, wouldn't it? How did they come up with this grand scheme? Well, the view of the government, Your Honor, is that it was Mr. Kaith. I'm asking you. Um, Mr. Kaith was the, uh, salesman, Your Honor. Um, he was the one that contacted the individuals with the government or with the tribes to... Wasn't it his company, his lighting company? Pardon me, Your Honor? Wasn't it his lighting company? Well, he was just an employee of several different lighting companies, Your Honor. The particular one involved in the bulk of the transaction was Westlight out of, uh, I think Turtle Lake, North Dakota. Um, he was just a commissioned salesman. Uh, he would submit, uh, either by telephone or fax an invoice to them and they, they would simply fill it, um, and either ship it directly to the government or, or have Mr. Kaith deliver it. Um, so, I mean, he was doing what, and I don't want to make what was a complex case overly simple, but he was doing what a commissioned salesman does. He has to go out and contact people, um, in order to make a sale, in order to make any money, in order to make his transaction. And by simply giving someone, um, cash or money for the continuation of business, which is, is really an element of the offense, uh, I don't think we can pin, uh, someone as being an organizer or leader. We don't dispute... When you look at Note 4, though, of the guidelines, it lists a number of factors the Court should consider. And, um, I'll just proceed over a couple of them that, that don't need too much debate, but he did recruit the other people to accept his bribes or give him kickbacks, um, the other, his co-defendants, um, and that's one of the factors. And he did, according to the evidence, receive a larger share of the profits from this enterprise than the people who were bribed or received the kickbacks. By far, Your Honor. All right. Um, so, and then it says the degree of participation in planning and organizing the offense. Well, he brought the scheme to them. They didn't go to him, right? Well, that's where we somewhat disagree, Your Honor. But first in regard to foot, uh, to Application Note Number 4, really what that's talking about is how does the Court distinguish an organizer or leader from a manager or supervisor. But then to get, uh, to what, um. So you're saying he's not even a manager or supervisor? Well, I, I think if we balance, yes, in some respects, Your Honor. I think if we balance, um, uh, Mr. Case's behavior against some of the other defendants, uh, the element of control isn't not necessarily there because that's what we have to focus on. Certainly he received more of the money and he's the one that made the initial contact, which is what those salesmen, uh, do. But he wasn't the one that could split the invoices to remain under $2,500. He was not the one that could manipulate the, uh, government credit card system so that, uh, individuals who had had it revoked by their employer for improper use could go get someone else, uh, or skirt. Go back to them and sell them these light bulbs and offer them bribes or kickbacks. Would they, I mean, how would these particular crimes have been completed? And he had to bring it to them. Yes, Judge. I mean, I can't dispute that, but, uh, if we did that, a part of the analysis, I think we come to the conclusion that every kickback or bribery case, the person presenting the money or, or the. Well, if it's not more than five persons and if it's not otherwise extensive and if it isn't the one who's the genesis of the scheme, but just has an idea, then I don't think that's necessarily the case. I concede that, Your Honor. We have to meet that threshold of five or more. Um, but when you look at what is necessary for, uh, this to take place, there, I would argue, is much involvement in the manipulation of the system, uh, by the individuals receiving the money as there was by Mr. Kaith. Um, you, you seem to put a lot of emphasis on control, but I mean, the degree of control is one factor, but there are a lot of other factors in the recruitment of participants is, is simply a major factor here. I mean, I think there are a whole lot of factors the sentencing judge can take into account. And he looks at, uh, you know, a client and sees that, uh, without him, the whole, this thing wouldn't have gone off the ground. Uh, I, I can't dispute that. I mean, Your Honor, there's, there's, uh, consideration for relative culpability and certainly Mr. Kaith was far more culpable than the other individuals. I was just not sure that the element of control, uh, was present necessary, uh, that the court has set out in. Well, but it's certainly, you know, the application knows his degree of control, but you, you wouldn't deny that he got the largest, uh, largest share than others? No, Your Honor. He received thousands and thousands of dollars compared to hundreds of dollars for the others. I think my time's up. Thank you very much. Good morning. I'm Bob Kelleher and I represent, uh, Keith Reese. I'm going to just take a couple of minutes here. Um, the argument, uh, that I'm raising for Mr. Reese is that the court improperly applied the guideline, uh, 2C1.1 when the guidelines specifically relate 2C1.7 to the offense of conviction. He pled guilty to count four, depriving the government of honest services. And, and that is 2C1.7. What the court did here is apply the cross-reference, which was improper. Why was, why was applying the cross-reference improper? There's four categories to that cross-reference and the court relied on part one and part four, neither of which applies here. Part one is logically inconsistent. It says if the offense of conviction facilitated another offense, then apply that guideline. And the court said that, uh, Mr. Reese, uh, committed bribery to facilitate fraud, which is putting it backwards. He, uh, accepted bribes in order to, uh, commit the crime of fraud. If facilitate means to give an impetus to, or to have a cause and effect relationship, then it's... If you could just put it, this is sort of a chicken and egg argument to me, because you could put it the other way, that he committed the fraud so that he could get the bribes or kickbacks or whatever you want to call them. He wanted to get this money. So he committed this fraud so that he'd get this extra money in his pocket. It is sort of a chicken and the egg, but I think the way that under the strict reading of the actual guideline itself, it talks about this offense facilitated that offense, this offense, meaning, uh, rightful, uh, honest services, facilitated the acceptance of bribes. And that doesn't make any sense logically. If you call them kickbacks, does it make sense? No, I don't think so. Because you, the kickbacks motivated the fraud rather than the fraud motivating the kickbacks. I'm looking at it in a real logical sequence and it doesn't make any sense that way. And the, and the second reason the court gave is that, that, uh, another offense or another guideline section more specifically applies. And that's assuming that, that this is more specifically a case of bribery than fraud. And as I argued in my brief, if anything is a 50, 50 split, neither one of them really balances out the other. And, uh, so even if we're going to look at the relevant conduct issue, um, this is still at heart a fraud case and it's not at heart a bribery case, if anything at best. Let me see how you can possibly say that the bribes were key to the whole thing and you might as well face it. Well, I mean, it was, it was a fraud against the government and, and bribes were part and parcel of that, but it's, it's also a fraud case. It's what hurt the government was the fraud, not the bribes. Well, the bribes were hit too. The bribes were there. They're out there. Definitely a significant factor, but whether or not they're more specifically what this case is all about is my argument. And therefore I think it should default to 2C1.7, which is what the guideline says specifically applies to his count of conviction. If he had pled guilty to count one, then I think the government would have an argument. But I don't think they do because he pled guilty to count four. What's the practical difference in the sentencing? Two months. Two months. Yes, Your Honor. Have they already completed their sentences? No. He's still in custody. In custody. Yes. He's due to get out toward the end of January. That's all I have. Thank you. Thank you, counsel. If it pleases the Court, my name is Jay Lansing. I represent Mr. Alden. Mr. Alden is a 62-year-old gentleman who pled guilty to his first felony or criminal offense of any kind in his lifetime. He had worked for the Indian Health Service for about 21 years. And as a result of this case, of course, he has lost his employment. He pled guilty. In their plea agreements, were there any representations by the government that they would be sentenced pursuant to one guideline or another, or that the government would make a recommendation as to the particular sentence that would be imposed on Mr. Alden? Yes, Judge. In paragraph 12 of Mr. Alden's plea agreement, although Mr. Alden's plea agreement did not come to an agreement about what specific guideline would apply to Mr. Alden, he agreed that the government would recommend to the Court that this section 2C1.7 would be the applicable guideline for Mr. Alden. And I know that Mr. Kelleher has discussed that particular issue, but I would like to bring a couple of items to the attention of the Court. When we deal with Mr. Alden, the judge only relied on this cross-reference 4. And for Mr. Alden, it meant a difference of being at offense level 14, which is where he was ending up with the sentencing the way it was, versus 12. If he was at offense level 12 with no criminal history, he was then entitled to the possibility of a split sentence. But when we talk about that fourth cross-reference, it talks about which one is more applicable. And I understand, Judge, that you say it's a bribe case. But when you look at how the thing came about, especially with regard to Mr. Alden, it was a matter of Mr. Keith coming and creating a relationship with him. And sticking a $20 bill in his pocket, bringing him a carton of cigarettes, doing those kinds of things to create that relationship. And when I look at bribe, obviously, he wanted him to do something. But I say, Judge, that it's more than that. Because when I look at some of these other cases, these other cases talk about where somebody is being bribed to create a situation in which they're getting confidential information, or they're getting a contract, or something of that nature. But here what was going on is there was a number of other parts to that particular case. There was the purchase of the excess or unnecessary goods. That was part of what the mail fraud part was about. There was the purchase of goods at an excessive price. That was also part of it. Another part of it was the structuring of the purchases. So it was under the $2,500 micro-purchasing limit. There was also a loss to the government. In some of these cases where confidential information is given out to others, there isn't always that loss to the government. When we look at the flip side of that, Mr. Alden's restitution, which I'd like to get to in just a moment, is not limited to solely the payments that he received. It's a much broader, and of course the court considered the total amount of loss to the government. The other thing, Judge, that I think that we have to keep in mind is that when we go back to what the guideline was designed to deal with, they would sit there and say that these government employees conducted themselves in a manner in which the citizens did not receive their right to their honest services by a public official. And that's what Section 2C1.7 is all about. And I think that when we look at all of those things, you know, we sit there and we agree, at least, that that's what the recommended guidelines should be. That's the offense that we plead to. And then we figure out some way of increasing that offense level to send a 62-year-old man off to prison for longer. The government recommended that sentencing, that the court apply 2C1.7 to an employee, David, as you just represented. I don't remember if Mr. Johnson specifically stood up and said that it should be 2C1.7. Was that the recommendation? I haven't looked at the PSR in a while, but I can't recall. It's in paragraph. Was that the recommendation in the PSR? It was in the plea agreement that it be 2C1.7. And what did the probation officer recommend to the district court? He recommended that it should be 2C1.1. He recommended that the cross-reference be applied. Is there any claim here that, was there any claim raised at all that the government didn't honor its commitment in the plea agreement? No, Judge, no. In regard to the issue of restitution, the restitution that Mr. Alden was ordered to pay totaled $23,540 and some odd cents. The problem arises in regard to this particular case and how the court apportioned that liability for the total loss of $33,000. And I'll just use some rough figures instead of specific figures. But there's no doubt and there's no dispute that the total amount of loss that the government suffered as a result of Mr. Alden and Mr. Kaith's actions as to those two people was approximately $33,000. We also know from the record that the amount of money that Mr. Kaith put in his pocket was, in essence, $33,000 because that money became excess commissions, excess profit for him. And obviously, there's no doubt that the judge could have said, I am going to simply allocate and make you both jointly and severally responsible for the entire amount. But the statute says you can do that, judge, or you can apportion it. And what happened here was we got into this convoluted, just as easily as we could have applied 2C1.7, we create this convoluted calculations where we take the $33,000, we subtract off the amount of money that was paid to Mr. Alden. We then split the difference. We then take half of that amount, which is about $9,500. We stick that back onto the amount of money that Mr. Alden received, which was about $13,000, and we make him pay back basically $23,000 out of that $33,000. We then end up with Mr. Kaith sitting here with still only having to make restitution of basically about $10,000 of that amount. So we have not disgorged Mr. Kaith of that amount of those excess profits that he has been able to obtain, and we put that burden on Mr. Alden, who was duped into this whole thing, and obviously he's — I can't sit here and say he's totally innocent because he's not, but he's a person that now carries not only his own financial burden, but also the burden that should have been the burden of Mr. Kaith. And we would ask the Court to reverse the order of restitution. So what's your position? How much do you — what's your position, though? What's the amount of restitution that you're asking? The amount of restitution that Mr. Alden should pay is $13,983. That's the amount of money that he received plus the amount of the transfer fees, the wire transfer fees. $13,900 what? $13,983. Okay. The rest of that amount should have been Mr. Kaith's. Thank you very much. Thank you very much, counsel. Good morning, and may it please the Court. My name is Leif Johnson, assistant United States attorney from Montana. Let me quickly address the last point raised by — excuse me — Mr. Lansing on behalf of Mr. Alden. With regard to the restitution, obviously it is a difficult issue for the Court to try to define in a complicated case like this. We had a number of co-defendants, as you're aware. We had kickback payments over a long period of time. Really what the defendant has asked here for is that he be responsible in restitution for the return of the kickback bribes that he received. And clearly the Court's position, which I think is reflected in the case law, is that restitution can also reflect the larger culpability of his involvement in the case. In this instance, clearly the kickbacks themselves don't adequately represent his culpability or his involvement in the overall loss that the government suffered as a result of those kickbacks. And our position with regard to the restitution is clearly that we have to give the district court some leeway here in order to define something that in the Court's discretion — What's the standard of review on restitution amounts? Amounts, I believe, are abuse of discretion, Your Honor. I may be incorrect there, but I believe that's the standard. Well, it does seem somewhat unfair when he only received $13,000 to make a kickback to pay back. Is it joint and severally apportioned, or how was it done? Your Honor, the Court can obviously decide in a case involving a scheme or a conspiracy that two parties are joint and severally liable. Clearly the judge did not do that here. He tried to apportion to reflect some sort of culpability or fairness between them. One of the issues that the Defendant raises, and clearly it's a good point, is that, you know, here we're standing looking at Kerm, Cath, and Art Alden, and Art ends up paying more than Kerm, and Kerm's the guy who started all of this. And that's certainly true if you look at the two of them in an isolated fashion. But I think the Court was clearly looking at all of the participants at one time, and Kerm got half of the loss with regard to Reese and half with regard to Three Alden and then Dillon. So when you look at the overall picture, I think the district court had a basis for saying. He also made most of the money off of this. He did, Your Honor. And when you break down the $33,000, that's really the amount of excess payment that the government made for those goods and services. So that was the amount over and above that we should have paid probably on the retail market. And so about a third of that went to Art Alden in this case, and he would have kept the remaining $20,000. So that's pretty much the breakdown of that. And while the Court used that as a basis for restitution, I don't think it accurately represents the full harm caused, obviously because there were findings in the PSR that a lot of this excess property that was then shipped and stored at the BIA was never found later. It was all given away, and the record indicates that Mr. Alden was doing part of that giving away. Now, whether he converted that into cash, I don't know, and I can't say. Can we talk about this C1.1? Yes. 1.1. Now, did you agree with both Alden and Reese in their plea agreements that they would be subject to sentencing under 2C1.7? Well, I know I did it with regard to Mr. Alden as he's raised here. I didn't look at that issue specifically as it wasn't raised in the case. I do believe that I did that, and I do know for the courts, you know, I know that on one instance I did, at least on one instance because I read it last night, I did not send a date to the district court at sentencing that I felt that the PSR's recommendation of 2C1.1 was appropriate. Because it does seem in the sentencing transcript the judge kind of was getting it backwards. Yes. Which thing was facilitating which thing. Right. And if you read the cross-reference on 2C1.7c, it says that the offense was committed for the purpose of facilitating the commission of another criminal offense. Let me address that, Your Honor, real quickly. Yeah. Which offense are we talking about? Because he was he pled guilty to this fraud involving deprivation of the intangible rights to honest services. So that has to be the fraud for dishonest services. If that was committed for the purpose of facilitating another criminal offense There is some appeal to the argument that the fraud wasn't committed to get the bribe. Rather, he gave the guy the bribe to get him to commit this fraud. I agree. There is appeal to that argument. And actually, if you read on, Your Honor, it says it directs the court to apply the offense guideline applicable to a conspiracy to commit that other offense. Another question. That wasn't done. It wasn't done. And clearly, I think, if you look at these two provisions, the court, as it did in the Alden case, should have simply focused on sub 4. That's the one that should apply here. I think for the facts of this case, we should simply concede that number 1 doesn't get us there. Now, did he apply both 1 and 4 to, right, okay, straighten me out. Did he apply cross-reference 1 to both Alden and these deaths, too? 1 and 4 to Reese and then just 4 to Alden. Okay. So you're conceding basically that applying 1 was error. I believe it was, Your Honor. You know, we made the old college try it, this sort of chicken and the egg argument. But I really don't think that when you look at these four provisions, intellectually honest to say that one should be considered, that's clearly there to incorporate other circumstances, I think. So then we focus on 4. Right. Why do you believe that the offense is covered more specifically under bribe when the fact is they pled guilty to depriving the intangible right to honest services? Well, I guess the precise issue that troubles me about that is they were alleged to have committed, the indictment has several counts. The one they choose to plead to enter into the plea agreement with the government on is one that doesn't give them these two extra months that might let them have, you know, a lighter sentence. Yes. And then they get immediately swept up into the count which they didn't plead to. Right. And clearly, you know, in the process of negotiations with the defendants, that was an argument that, you know, they wanted to be able to make to the court. I think that when you look at the cases, which none of us had done at that early stage, you know, to me it's pretty evident that the court, you know, had the leeway to do what it did. And the reason I say that is because the cases pretty much direct the court and the probation office to first and foremost step back, step back from what the parties have even recommended and find out what the essence of the defendant's conduct is here. And in doing that, and I'm referring to the Serpico case and the Montani case, in doing that, then the court, having derived what the essence of the behavior is, then it needs to look at sub 4 and ask if it is more specifically covered under 2C1.1. It's okay. You say more specifically. It seems to me sort of equally covered. Well. At most. Well, that's a good point. And that's the point Mr. Reese is making here. He's saying we've got fraud and then we've got bribery. They're so interrelated of what. And they're so intertwined in this case that the reason, and I think the point that the courts like Montani and, oh, Poirier have. I suppose it's a Ninth Circuit case. I know some are not. You know, I believe that Montani is 7th and Poirier is 11th. So. Is there a Ninth Circuit case on point of this? The closest would be probably the Serpico case. 7th Circuit case. Oh, you're right. I don't think that the Ninth Circuit has used the language that we are tying our brief to, which is that fraud or bribery to achieve fraud language, which the court found as the essence of the offense in those cases, and then said if that's the essence of the offense, then 2C1.1 clearly does apply. But even if we don't rely specifically on that language. For our purposes, this is kind of a case of first impression. Yes. Whether that applies. I believe that's correct. But at the same time, it's really not a case of first impression when you look at the essence of the conduct. And if we say here that really the bribes are what got this all going and made this work, then we have to look at the guidelines themselves. And 2C1.7 and 2C1.1 are essentially identical. The bribes might have started it, but really, the thing about why would the government want to prosecute and stop this? It's because these government, the Indian Bureau and the health services agencies are being ripped off. They're losing money because they're buying equipment they don't need. They're buying equipment that they're not, that doesn't even go to them. I mean, it really has more to do with the agency. You prosecute this case because these agencies were losing the benefits of what they were paying for. That's sort of the government's victim interest. And that's what the point that Mr. Reese just made. You know, here the government was really only hurt because it was ripped off and the bribes themselves didn't really have that effect. But, yes, they did. They corrupted government employees. It's a terrible situation where people in the Indian service think they can take bribes. And it seems to me in count four you lay out the offense of bribery along with the arrest.  There were payments to be made to government employees. I think you're admitting a little more than you have to admit. He pleaded guilty to that. I agree. Let me ask you about the restitution. Why, I look at the pre-tenant's report and you have the loss to the government is 33,000. Then the bribe, described here euphemistically as a kickback, is 12,000. He's liable for that, too. Why should it be subtracted rather than added? I should think you'd come up with 45,000 instead of 23,000. He's liable. When a bribe is involved, the person is liable for it. Why is it subtracted from what he has to pay? That's a very good question. And I don't know the specific answer to that. I just don't understand it. And I don't really know the answer to that except to say that why shouldn't we add it back on? Well, you know, I think the court probably had the discretion to do that. But clearly what the judge ---- You should have known more about the case. Did you prosecute him? I did, yes. Clearly what the judge was trying to do was say, look, the bribes themselves are like a contraband. You got something. It was illegal. Give it back. And then the remaining, the judge was trying to find a split that he thought equitably represented. A government employee takes 12,000 of bribes. That's government property. The government has a right to it. Exactly. He's causing a loss to the government of 33,000. Exactly. That's a $45,000 liability. And the judge ends up paying him off for 23. Where were you when this was going on? I was there, Your Honor. And actually, you know, we had argument. We had quite a bit of argument over how this should all play out and whether or not the government would be overcompensated if, in fact, it received something over and above the actual excessive amounts cost. And the reason I think the judge settled on this is because he was taking the pot of money that the government paid in excess. And what you're saying is you're really trying to double count that 13,000. It's not double counted, but just add it on. There's the loss to the government, and there is also a payment of bribes that the government's entitled to. And we would certainly concede that. It was money that the government agent was taking. Yeah. And certainly, I think you raise a very good point. And we concede that that would also be more than a ---- Well, maybe we ought to send it back for resentencing on that point. That's certainly an option, Your Honor. We haven't raised that, obviously, on appeal. But I think that you raise a very good point. The other consideration here is that Kermcath was also sending the bribes. And certainly, if we could tack on 13,000 to Alden for simply receiving them, we could tack on an additional 13 to Mr. Kermcath for sending them. Because we're not talking about real money actually lost here now. We're talking about hypothetical money that was spent out of the excesses received by the government employees that should have gone to the government. We have a case on that very recently that when money is paid to an officer of the government for selling out the government, that's money that belongs to the government. I agree. I absolutely agree. And you raise a very good point. And clearly, you know, this was a case where a person like Ari Alden, Kermcath, I think, paid obviously the heaviest price for the crime that was committed here. And I think that the Court really looked at this as saying, look, Kermcath, and it's similar to the Berry case. If you remember, that's the case involving some mail theft and destruction. And there, the perpetrator, he really used people who were predisposed to join him. They needed the money. And that's clearly what happened here. And I think that's reflected in the judge's restitution order. Kermcath went out, identified, recruited, and did all the things that are listed in the organizer leader application notes. And he really did take advantage of people who were predisposed to needing the money or whatever. Clearly, they're government employees. But he was hitting the Indian reservation, so he could find government employees who had access to credit cards and who were predisposed to agree to conduct this activity. He did it, and it was his design. And I think that was the purpose for the judge's sentence. That was the purpose for his organizer and leader. And that was the purpose for the way he arranged the restitution. And clearly, he wanted to make a point that government employees are not for sale down in the reservations. And I think that this case did that. If the Court has any further questions, I'll sit down, otherwise. Thank you. All right. The case of United States v. Reese, Aldrin, Kapp will be submitted. Thank you, counsel. And the Court will be adjourned for the day. All rise.
judges: Wardlaw, Noonan, Paez